IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| WILLIAM DONALD GROSSMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>CRAIG TURNBULL, et al.,<br><br>    Defendants. | Case No. 3:06-cv-00089-TMB<br><br>ORDER PERMITTING<br><u>AMENDED COMPLAINT</u> |

<u>Section 1915 Screening</u>

William Donald Grossman, a state prisoner representing himself, has filed a civil rights complaint under 42 U.S.C. § 1983, claiming that the twelve defendants have violated his constitutional rights.[1]  The Court is required at the outset to screen Mr. Grossman's complaint, and dismiss if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

---

[1] *See* Docket No. 1.  Mr. Grossman failed to sign his complaint.  *See id.* at 10; Docket No. 8 at 2 (signed letter, requesting that the Court "xerox [his] signature on the complaint.")  However, because of the numerous problems with the substance of the complaint, Mr. Grossman must amend the complaint in order to proceed with this action.

against a defendant who is immune from such relief."[2] In conducting its review, the Court is mindful that it must liberally construe a self-represented plaintiff's pleadings and give the plaintiff the benefit of any doubt.[3] Before a court may dismiss Mr. Grossman's complaint for failure to state a claim upon which relief may be granted, the Court must provide him with a statement of the deficiencies in the complaint and an opportunity to amend, unless it is clear that amendment would be futile.[4]

---

[2] 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1) (screening prisoner civil rights actions); *Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (subsection (iii) requires "dismissal of in forma pauperis proceedings that seek monetary relief against immune defendants"); *Minetti v. Port of Seattle*, 152 F.3d 1113, 1115 (9th Cir.1998) (quoting *Tripati v. First Nat'l Bank & Trust*, 821 F.2d 1368, 1369 (9th Cir. 1987) (deny leave to proceed IFP "at the outset if it appears from the face of the proposed complaint that the action is frivolous or without merit").

[3] *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff. ... Additionally, in general, courts must construe *pro se* pleadings liberally."); *Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers."); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999) (self-represented prisoner's claims must be liberally construed, and given the benefit of any doubt); *Ortez v. Washington County,* 88 F.3d 804, 807 (9th Cir. 1996).

[4] *See Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) ("Futility of amendment ... frequently means that 'it was not factually possible for [plaintiff] to amend the complaint so as to satisfy the standing requirement.'") (citations excluded); *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987); *see also Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) ("dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996)"); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) ("Dismissal without leave to amend is

As a federal court, this Court is a court of limited, as opposed to general, jurisdiction; it has authority to hear only specified classes of cases. It is Mr. Grossman's burden, as the plaintiff, to show that this Court has jurisdiction to hear the claims.[5] "To sustain a claim under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right."[6] As explained by the United States Supreme Court, Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred."[7] This Court is not a court of appeals for state court decisions.[8] That is, Mr. Grossman cannot appeal an adverse state court decision to this Court.

---

proper only in 'extraordinary' cases.") (citation omitted).

[5] *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Hunter v. Kalt*, 66 F.3d 1002, 1005 (9th Cir. 1995).

[6] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (citations omitted).

[7] *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)

[8] *See Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986) (citing, inter alia, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 476 (1983)) (a United States district court "has no authority to review the final determinations of a state court in judicial proceedings," even where the challenge to the state court decision involves federal constitutional issues)); *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) ("As courts of original jurisdiction ... federal district courts lack jurisdiction to review the final determinations of a state court in judicial proceedings.").

Right to Medical Care

Mr. Grossman complains of the medical care he has received for his mental health.[9]  Mr. Grossman is cautioned that it is much harder to state a claim under federal law, than to state a claim for medical malpractice under state law, and that he may want to consider filing a medical malpractice lawsuit in **state court** for this claim.  Although the duty to provide medical care encompasses psychiatric needs,[10] to state a claim based upon inadequate medical care under the Eight Amendment to the Constitution, Mr. Grossman must allege facts showing **deliberate indifference** to serious medical needs.  This claim must involve **more than malpractice**.[11]  A difference of opinion between medical officials, or between prison doctors and the inmate, does not establish deliberate indifference unless the

---

[9] *See* Docket No. 1 at 11-12.

[10] *See Gibson v. County of Washoe, Nev.* 290 F.3d 1175, 1186 (9th Cir. 2002) ("In order to comply with their duty not to engage in acts evidencing deliberate indifference to inmates' medical and psychiatric needs, jails must provide medical staff who are 'competent to deal with prisoners' problems.'"), quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir.1982).

[11] *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hallett v. Morgan*, 287 F.3d 1193, 1205 (9th Cir. 2002) ("First, [Plaintiffs] must prove that Defendants have deprived them of the 'minimal civilized measure of life's necessities.' ... Second, Plaintiffs must demonstrate that Defendants acted with 'deliberate indifference' in doing so.") (citations omitted); *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992) (Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay, or intentionally interfere with medical treatment.") (citations omitted).

prisoner demonstrates that the course of treatment was chosen with **conscious disregard** to the inmate's health.[12]

Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying needed medical care to a prisoner only if the person "knows of and disregards an excessive risk to inmate health and safety."[13] If the defendant should have been aware of the risk, but was not, s/he has not violated the Eighth Amendment, no matter how severe the risk.[14] But if the defendant is aware of a substantial risk of serious harm, s/he may be liable for neglecting a prisoner's serious medical needs on the basis of action **or** inaction.[15]

The Ninth Circuit looks at two elements in cases alleging deliberate indifference to a prisoner's medical needs: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."[16] A medical need is serious, and in violation of the Eighth Amendment, if the failure to treat the inmate's condition could result in further significant injury or the "unnecessary and

---

[12] See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

[13] Farmer v. Brennan, 511 U.S. at 825, 837 (1994).

[14] See Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001).

[15] See Farmer, 511 U.S. at 842.

[16] McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (denial of treatment for serious medical needs violates the Constitution; delay of, or interference with treatment, violates the Constitution if it leads to further serious injury).

wanton infliction of pain."[17]  As explained by the Ninth Circuit, the "Eighth Amendment is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable."[18]

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain," which includes sanctions that are "so totally without penological justification that [they result] in the gratuitous infliction of suffering."[19]  Mr. Grossman does not appear to meet this very high federal pleading standard in his initial complaint, where he claims that he was given the wrong combination of antidepressants, resulting in permanent damage to his vision,[20] and that he has failed to receive mental health counseling in a timely manner,[21] although he may be able to bring a cognizable malpractice case in state court.[22]

---

[17]  *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 104).

[18]  *Hallett v. Morgan*, 287 F.3d at 1205.

[19]  *Hoptowit v. Ray*, 682 F.2d at 1246 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

[20]  Mr. Grossman claims that his "medication was changed from Zoloft to Elavil" and that "Stallman left [him] on both medications at the same time, which resulted in [his] vision being permanently damaged." Docket No. 1 at 11.  Thus, Mr. Grossman may have a claim for medical malpractice, which is a **state law claim**.  Mr. Grossman's claims that answers to his grievances were unresponsive, do not indicate that a different response would have changed the fact that his vision was already damaged by the combination of medications.  *See id.* at 11-12.

[21]  *See* Docket No. 1 at 19-20.

[22]  *See Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) ("The PLRA provides that '[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered

### Segregation Menu

Mr. Grossman's complaint about being served chicken patties, while in segregation, is frivolous.[23] "[A] complaint ... is frivolous where it lacks an arguable basis either in law or in fact."[24] Mr. Grossman's preference for chicken containing bones does not rise to the level of a Constitutionally guaranteed right.

### Sewage

Mr. Grossman claims that he has suffered from sewage "stagnating in front of [his] cell for several days."[25] Some courts have held that "filthy cell conditions may constitute an Eighth Amendment violation."[26] In fact, it has been held that extended

---

while in custody without a prior showing of physical injury.' 42 U.S.C. § 1997e(e). This circuit has recognized that '[i]n drafting § 1997e(e), Congress failed to specify the type, duration, extent, or cause of 'physical injury' that it intended to serve as a threshold qualification for mental and emotional injury claims.' *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir.2002). As such, 'for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*.' *Id.* at 627.").

[23] *See id.* at 13-14.

[24] *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

[25] Docket No. 1 at 15-16.

[26] *Gates v. Cook*, 376 F. 3d 323 (5th Cir. 2004), citing *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999); *Howard v. Adkison*, 887 F.3d 134, 137 (8th Cir. 1989) ("inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time"); and *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (three days in a feces-covered cell states a claim upon which relief could be granted).

**exposure to human waste** is a violation of **clearly established law**, so that a prison official is not entitled to qualified immunity in an inmate's § 1983 action, based upon the Eighth Amendment's prohibition against cruel and unusual punishment.[27] And the Court of Appeals for the Ninth Circuit has found that a prisoner's claims based upon unsanitary food handling and polluted water was not frivolous.[28]

---

[27] *See DeSpain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001) (exposure to human waste as a result of flooding); *see also Gaston v. Coughlin*, 249 F.3d156 (2nd Cir. 2001) (Prisoner's claims regarding unsanitary conditions in his cell, which included allegations that mice were constantly entering his cell, and that for several consecutive days area directly in front of his cell was filled with human feces, urine, and sewage water, were sufficient to allege inhumane conditions in violation of his Eighth Amendment right to be free from cruel and unusual punishment, and thus to state a § 1983 claim against prison officials allegedly responsible for the conditions); *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate ... [b]ut failing to provide a maximally save environment, one completely free from pollution or safety hazards, is not."), citing *Helling v. McKinney*, 509 U.S. 5 (1993) (finding unreasonably high exposure to environmental tobacco smoke where plaintiff was housed with a five-packs-per-day smoker); *but see Shannon v. Graves*, 257 F.3d 1164 (10th Cir. 2001) (Prison inmate who was allegedly exposed to raw sewage must be able to demonstrate that prison officials acted with deliberate indifference, and must establish that sewage backups at prison were sufficiently serious so as to constitute substantial risk of serious harm, for purposes of inmate's § 1983 action alleging Eighth Amendment violation for constitutionally inadequate conditions of confinement; although prison officials were aware of inadequacies of sewage system, evidence did not establish that sewage backups were of sufficient frequency and duration to present question of serious risk, and evidence tended to show that most backups were corrected by maintenance within a day or two.).

[28] *See Jackson v. Arizona*, 885 623, 641 (9th Cir. 1989).

Protection of Prisoners

Mr. Grossman claims that he has received verbal and written threats from inmates, and that various prison officials have ignored those threats.[29] Prisoners are entitled to be protected from **bodily harm.**[30] "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse."[31] To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to **serious threats** to the inmate's safety.[32]

To demonstrate that a prison official was "deliberately indifferent" to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[33] To prove knowledge

---

[29] *See* Docket No. 1 at 17-18.

[30] *See Estate of Amos v. City of Page, Arizona*, 257 F.3d 1086, 1090 (9th Cir. 2001) ("the 'special relationship' exception [to the general rule that a state's failure to protect an individual from danger does not constitute a violation of the Due Process Clause] states that 'when the State takes a person into its *custody* and holds him there against his will, the Constitution imposes some responsibility for [that person's] safety and general well-being.'"), quoting *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058-59 (9th Cir.1998).

[31] *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982) (citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[32] *See Farmer*, 511 U.S. at 834; *Willis v. Baldwin*, 70 F.3d 1074, 1076-77 (9th Cir. 1995).

[33] *Farmer*, 511 U.S. at 837.

of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge.[34]

The United States Supreme Court has explained as follows:

> In particular, as the lower courts have uniformly held, and as we have assumed, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (CA1) (internal quotation marks and citation omitted), cert. denied, 488 U.S. 823 (1988); *see also Wilson v. Seiter*, 501 U.S., at 303 (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment). Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," *Hudson v. Palmer*, supra, 468 U.S., at 526, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. *Cf. DeShaney*, supra, 489 U.S., at 199-200; *Estelle*, supra, 429 U.S., at 103-104.[35]

### Access to the Courts

Prisoners have a fundamental right of access to the courts.[36] Mr. Grossman has alleged that he was denied access to the courts through "access to the law library."[37] However, the United States Supreme Court has held that there is no "abstract, freestanding right to a law library or legal assistance."[38] Mr. Grossman only

---

[34] *See id.* at 841-42.

[35] *Farmer*, 511 U.S. at 833.

[36] *See Bounds v. Smith*, 430 U.S. 817 (1977).

[37] *See* Docket No. 1 at 21-25.

[38] *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Mayweathers v. Newland*, 258 F.3d 930, 934 (9th Cir. 2001) ("to satisfy standing

has a "right to bring to court a grievance [not to] litigate effectively once in court."[39] The critical element here is "the capability of *bringing* contemplated challenges to sentences or conditions of confinement before the courts. ... It is that capability *rather than the capability of turning pages in a law library*, that is the touchstone."[40]

In addition, confiscation of pro se legal materials by prison authorities may be cognizable claim under § 1983.[41] But Mr. Grossman must be sure to show an **actual injury** in order to prevail on this claim. Thus far, he has not.

<u>Individual v. Official Capacity</u>

Individual (or personal) capacity suits "seek to impose personal liability upon a government official for actions [the official] takes under color of state law."[42] Liability in an **individual capacity** suit for **money damages** can be demonstrated by showing that the official **caused** the alleged injury.[43]

---

requirements, an inmate must 'demonstrate that the alleged shortcomings in the library ... hindered his efforts to pursue a legal claim'"), quoting *Lewis*, 518 U.S. at 351.

[39] *Id.* at 354.

[40] *Id.* at 356-57 (emphasis added).

[41] *See Morello v. James*, 810 F.2d 344, (2d Cir.1987); *see also Newell v. Sauser*, 79 F.3d 115 (9th Cir. 1998) ("A reasonable officer would have known that seizing computer-generated legal papers from his cell was unlawful.").

[42] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[43] *See id.* at 166.

Thus, in order to state a viable civil rights claim against state officials in their individual capacities, allegations of personal participation are required.[44] Without allegations of personal participation, the claim must be dismissed. "State officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights."[45] In addition, state officials cannot be held liable for alleged civil rights violations under the theory of respondeat superior.[46] In other words, supervisors cannot be held personally liable merely due to the fact that they have authority over other employees.

If sued in their **official capacity** for **injunctive relief**, rather than money damages, the Eleventh Amendment does not bar suit. State officials sued in their official capacity are persons for purposes of § 1983, "because official-capacity actions for prospective relief are not treated as actions against the State."[47] In an official

---

[44] *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).

[45] *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (citation omitted).

[46] *See e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (insufficient showing of direct participation by Attorney General or Director of State Prison).

[47] *Kentucky v. Graham,* 473 U.S. at 167 n. 14; *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Michigan*, 491 U.S. 58, 71 n. 10 (1989); *Guam Soc. of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1370-71 (9th Cir.), *cert. denied*, 506 U.S. 1011 (1992); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991); *Price v. Alaska*, 928 F.2d 824, 828 n. 3 (9th Cir. 1990), *cert. denied*, 502 U.S. 967 (1991). Official capacity actions filed against state officials for damages are merely an alternative way of pleading an action against the state. *See Kentucky v. Graham*, 473 U.S. at 165; *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Because the state is not a person for purposes of § 1983, "state officials, when sued

capacity suit, Mr. Grossman must demonstrate that a **policy or custom** of the government entity of which the official is an agent was the moving force behind the violation.[48] Mr. Grossman must decide, for each defendant, whether he or she is being sued in his or her individual (requesting money damages) or official (requesting injunctive relief) capacity; only rarely will both apply.

### Violations of State Law or Policy

Mr. Grossman says, throughout his complaint, that the defendants are substantially violating state law and/or policy. Because he has brought suit in federal court, however, he should base his claims primarily on violations of his federal rights.[49]

### Amending Complaint

Mr. Grossman will be given an opportunity to show, by amending his complaint before service,[50] to state a cognizable claim for relief in federal court. In any amended complaint, he must state, specifically, what each defendant did or did not do which he believes constitutes a legal wrong, and what specific relief he seeks from

---

for damages in their official capacities, are likewise not 'persons' within the meaning of § 1983." *Guam Soc. of Obstetricians & Gynecologists*, 962 F.2d at 1371.

[48] *See Kentucky v. Graham*, 473 U.S. at 166.

[49] *See Goldman v. Standard Insurance Co.*, 341 F.3d 1023, 1026 (9th Cir. 2003) (the Court may exercise it's **supplemental jurisdiction** over state law claims).

[50] *See* FED. R. CIV. P 15(a).

the Court. Mr. Grossman should limit his claims to those which state a federal cause of action and are not frivolous. He should only name individual officials who have participated in actions which have harmed him, as explained above.

Because Mr. Grossman is alleging violations of his civil rights, the Court has attached a form to assist him in amending the complaint in compliance with this Order. In completing this civil rights form, Mr. Grossman must give **dates and facts** in support of each claim. Mr. Grossman should state the facts in his own words, as if he were **briefly and concisely** telling someone what happened. The facts must specifically allege how **each defendant** has harmed him. Mr. Grossman must avoid stating conclusions.[51] He must carefully follow the instructions with the form. Later, if Mr. Grossman's claims proceed before the Court on the merits, at the discretion of the Court, he may be given an opportunity to submit a brief on the issues in which he may more thoroughly argue his case as he has done in the documents at docket number 1, filed with the Clerk of Court.[52]

---

[51] *But see Maduke v. Sunrise Hospital*, No. 03-15332 (9th Cir. July 15, 2004) (district court dismissed plaintiff's complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief can be granted, and the Court reversed, finding that plaintiff's conclusory allegations of racial discrimination were sufficient to move the case forward).

[52] A complaint is the "initial pleading that starts a civil actions and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief." BLACK'S LAW DICTIONARY. A brief, on the other hand, is a "written statement setting out the legal contentions of a party in litigation, ... consisting of legal and factual <u>arguments</u> and the <u>authorities</u> in support of them." *Id.*

Further, Mr. Grossman should make no reference to the initial complaint or other extraneous documents. The Court cannot refer to a prior pleading in order to make the amended complaint complete. An amended complaint must be complete in itself without reference to any prior pleading.[53] This is because, as a general rule, an amended complaint supersedes (takes the place of) the original complaint.[54]

**IT IS HEREBY ORDERED** that:

1. Mr. Grossman's complaint, at docket number 1, is STRICKEN, and Mr. Grossman will be permitted to file an amended complaint, on or before **June 12, 2006**, to state a claim for relief as explained in this Order.

2. The Clerk of Court is directed to send a copy of this Court's form PS01, Complaint Under the Civil Rights Act, with instructions, to Mr. Grossman with a copy of this Order.

3. In the alternative, Mr. Grossman may file the enclosed notice of voluntary dismissal, without prejudice, on or before **June 12, 2006**.[55]

---

[53] *See* D.Ak.LR 15.1(2).

[54] *See Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 706 n. 2 (1982) ("It is the complaint which defines the nature of an action, and once accepted, an amended complaint replaces the original."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (as a general rule, an amended complaint supersedes (takes the place of) the original complaint).

[55] Filing a voluntary dismissal avoids the risk of a "strike" under 28 U.S.C. § 1915(g) (a prisoner who files more than three actions or appeals

4. The Clerk of Court is directed to send form PS09, Notice of Voluntary Dismissal, to Mr. Grossman with this Order.

5. Mr. Grossman must provide the Court with the original, plus one complete and legible copy, of every paper he submits for filing, as required by this Court's Local Rule 10.1(b).

6. No further action will be taken on the pending motion for appointment of counsel, at docket number 7, until Mr. Grossman fully complies with this Order.

7. The Clerk of Court is directed to send a copy of our *pro se* handbook, "Representing Yourself in Alaska's Federal Court," to Mr. Grossman with this Order.

DATED this 15th day of May, 2006, at Anchorage, Alaska.

/s/TIMOTHY M. BURGESS
United States District Judge

---

in any federal court in the United States which are dismissed as frivolous or malicious or for failure to state a claim on which relief can be granted, will be prohibited from bringing any other actions without prepayment of fees, unless the prisoner can demonstrate that he or she is in "imminent danger of serious physical injury").